(July 30, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANUEL PATEL, Also Known as JAIME PIEDRATITA, Also Known as FLORENCIO AYALA, Also Known as MANUEL AYALA, Appellant.—Judgment of the Supreme Court, New York County (Dennis Edwards, Jr., J.), rendered on October 26, 1984, which convicted defendant, following a jury trial, of three counts of criminal possession of a weapon in the third degree and sentenced him, as a predicate felon, to three concurrent terms of from 3½ to 7 years' imprisonment, is modified on the law to the extent of reversing the convictions on counts two and three of the indictment, vacating the sentences imposed thereon and dismissing those counts of the indictment, and the judgment is otherwise affirmed.

At the outset, it should be noted that this case was previ-

ously considered by us in connection with the appeal from the judgment of conviction of the defendant's codefendant Leandro Perez *(People v Perez,* 125 AD2d 236). In that connection, a recapitulation of the following facts is appropriate:

On February 7, 1984, Police Officers Steven Schmidt and John Zaboras chased a man with a gun into an apartment building located on West 93rd Street in Manhattan. They lost the man's trail but, in the course of searching the building a second time, Officer Schmidt opened the stairway door to the sixth floor and observed the defendant exiting an apartment with the stock of a handgun protruding from his waistband. The officer drew his service revolver, directing defendant to stop. The defendant, however, fled back into the open apartment and locked the door behind him. Officer Schmidt then forced his way inside, while Officer Zaboras, who had just arrived on the sixth floor, remained outside and radioed for assistance.

The front door opened into a hallway with a bathroom entrance to the left. Further down the hall was a kitchen on the left and a living room/bedroom area to the right. After Officer Schmidt pushed in the door, knocking the defendant to the floor, he ordered the defendant to "freeze" and put his hands up. The defendant got up and ran to the rear of the apartment. The officer pursued him, having to pass various women and children in the hallway. When Officer Schmidt reached the end of the hall, he saw the defendant in the kitchen, tossing a revolver out the window. For the first time, the officer became aware that there were other men in the apartment, so he began to retreat down the hall. Codefendant Perez then emerged from the kitchen with a sawed-off shotgun aimed at Officer Schmidt, and the officer hastily dove into the bathroom. At this point, Officer Zaboras entered the apartment, his gun drawn, to encounter Perez aiming the shotgun at him. Officer Zaboras crouched for cover in the corner at the entrance of the hallway. He and Officer Schmidt both shouted for Perez to drop the weapon and come out with his hands raised.

Several other men were observed quickly crossing the hallway from the living room/bedroom to the kitchen. One of these persons then scurried back from the kitchen to the main room. During all of this movement, the defendant and his companions were yelling among themselves in Spanish. Shortly thereafter, Perez stepped back into the kitchen and reemerged into the hallway without the shotgun and with his hands up. The defendant and another man, Manuel Ayala,

also surrendered. In the kitchen, the officers discovered a sawed-off Mossberg shotgun, identified as the weapon pointed at the officers by Perez. Just below the kitchen window, in the courtyard outside the building, the officers found a .38 caliber revolver and a Winchester shotgun. All three men denied living or working in the apartment, which was leased to a Mr. Aledo.

Perez was convicted of three counts of criminal possession of a weapon in the third degree, but, on appeal, this court modified the judgment of conviction to the extent of reversing the convictions with respect to the revolver and the Winchester shotgun and dismissing those counts of the indictment. The basis for our decision was the lack of evidence that Perez had ever had physical possession of the weapons thrown from the apartment to the courtyard. According to this court, there were no facts presented at trial which demonstrated, or from which one could infer, Perez's ability to exercise control over the defendant's gun. Moreover, we held, no person was observed possessing or discarding from the kitchen window the Winchester retrieved from the courtyard. To show constructive possession, we concluded, "it must be established that defendant had dominion and control over the area where the gun was found or admitted owning or using the gun * * * No such facts were proven here. In this case it was not known from what area of the apartment the shotgun came and whether defendant had access to the shotgun. He certainly never admitted to its ownership or use. Furthermore, defendant did not live in the apartment nor was any evidence shown as to his purpose there that day. It is not even known if he was aware of that shotgun." *(People v Perez, supra,* at 237-238.)

The defendant herein, Manuel Patel, was also convicted of three counts of criminal possession of a weapon in the third degree. One of these counts involves the .38 caliber revolver recovered from the courtyard. In that regard, proof of the defendant's possession of the handgun was demonstrated beyond a reasonable doubt. Although the defendant contends that the record does not indicate that the 47 .38 caliber bullets found in the gun, on the ground, in the kitchen or in defendant's pockets were tested and thus determined to be operable, he failed to move for dismissal of the charge on such ground at trial. Consequently, he is precluded from raising this issue for the first time on appeal *(People v Dekle,* 56 NY2d 835; *People v Stahl,* 53 NY2d 1048; *People v Cona,* 49 NY2d 26).

As for the other two counts of which the defendant was convicted, they relate to his purported constructive possession of the two shotguns, the Winchester and the Mossberg. However, this court's ruling in the *Perez* case is equally applicable to the defendant and, therefore, dispositive here, at least insofar as the Winchester is concerned. There was not a scintilla of additional evidence against the defendant than there was against Perez that the former was ever in possession of the Winchester, constructive or otherwise. The police officers never noticed this shotgun in the defendant's hands, nor did they observe him throwing it out of the window. Indeed, the officers never even saw the Winchester in the apartment at all. In the absence of any proof whatever that the defendant had dominion or control over the area where the Winchester was found or admitted owning or using this weapon, the conviction on count three of the indictment must be reversed.

Count two, which involves the Mossberg shotgun, presents a more difficult problem. This is because it could theoretically be argued that when Perez utilized that weapon to hold off the police while the defendant and Ayala were endeavoring to dispose of the other firearms in the apartment, he was acting in concert with the defendant to commit certain criminal acts, including possession of the Mossberg. Certainly, it is evident that the defendant was aware of the presence of the Mossberg in the apartment and observed Perez pointing it at the officers. However, it could also be argued that Perez knew that the defendant was in possession of the .38 caliber revolver, which had been protruding in open view from the defendant's waistband, and, yet, this court reversed Perez's conviction on the count relating to the handgun. The fact is that Perez and the defendant were not convicted of, for example, resisting arrest. They were both convicted solely of possessory offenses, and, in that connection, Perez was the one who was carrying the Mossberg and convicted of its possession.

In *People v Casanova* (117 AD2d 742), the court held that where the defendant was not in actual physical possession of the weapon, the proof must establish that he had constructive possession of it. Thus, when a weapon is found in an area occupied by a number of people, and where no one individual could be deemed to have dominion and control over it, the People have the heavy burden of establishing constructive possession. *(See also, People v Perez, supra; People v Lucas,* 84 AD2d 582; *People v Vastola,* 70 AD2d 918.)* Further, even where two or more defendants are tried together in a theory

of acting in concert, the evidence must be considered separately as to each defendant. *(People v Vasquez,* 104 AD2d 429.) This is particularly the situation here, since Perez was the one who was observed to have dominion and control over the Mossberg shotgun.

The instant case does not, therefore, present any of the elements tending to demonstrate constructive possession. Another person clearly had dominion and control of the weapon in question, not the defendant. There is no indication that the defendant resided in the apartment, nor was he the one who rented the premises. There is also no proof that the defendant ever handled the Mossberg himself or that he exercised any authority over Perez. *(See, People v Quick,* 30 AD2d 561, *affd* 26 NY2d 773, wherein the court reversed a conviction on a gun possession charge in a case in which the defendant's codefendant, allegedly acting in concert, had wrested an officer's revolver away from him and shot him while the defendant, who had assaulted the officer with a knife, was restraining the officer with the assistance of yet another codefendant. According to the court, while the defendant in that matter could properly be convicted of the assault, the facts did not show the commission by the defendant of the separate and independent possession charge.) *People v Lynch* (116 AD2d 56), which is cited by the People and deals with the possession of a weapon by an occupant of a vehicle, is inapplicable here in view of, among other reasons, the existence of a statutory presumption (Penal Law § 265.15 [3]) not available to the prosecution in the present matter. Consequently, the People having failed to meet their heavy burden of establishing the defendant's possession of the Mossberg shotgun, the conviction on count two of the indictment must also be reversed. Concur —Murphy, P. J., Milonas, Kassal and Smith, JJ.

Sullivan, J., dissents in part in a memorandum as follows: In my view, the evidence was sufficient to establish defendant's actual possession of the Winchester shotgun and constructive possession of the Mossberg. Nor do I believe that this conclusion is undercut by our prior decision in *People v Perez* (125 AD2d 236).

An accused need not be in actual physical control of a weapon to be convicted of its possession. If it is within his immediate control and reach and "available for unlawful use if he so desires", a conviction may be sustained. *(People v Persce,* 204 NY 397, 402; *see also, People v Lemmons,* 40 NY2d 505, 509-510; *People v Lynch,* 116 AD2d 56.) The statute itself defines "possess" as meaning "to have physical possession or

otherwise to exercise dominion or control over tangible property." (Penal Law § 10.00 [8].) Concededly, where a gun is found in an area occupied by several people and no one individual is exercising dominion or control over it, the People "have a heavy burden in establishing constructive possession". *(People v Vastola,* 70 AD2d 918.) That burden, however, is not made insurmountable merely by virtue of the fact that others had access to the area where the weapon is found. *(People v Schriber,* 34 AD2d 852, 853, *affd* 29 NY2d 780; *People v Diaz,* 41 AD2d 382, *affd* 34 NY2d 689.) Moreover, on review of a conviction, it should be noted, the evidence must be viewed in the light most favorable to the prosecution *(People v Benzinger,* 36 NY2d 29, 32).

Measured against these principles, the evidence establishes defendant's possession of both shotguns. The events as described by the officers present the well-known scenario of one malefactor holding off the police while his confederates dispose of the contraband. According to the officers' testimony, which, essentially, went unrefuted, Perez, at the point of a shotgun, held the officers at bay while defendant and Ayala were disposing of the Winchester and various types of ammunition. Indeed, defendant was seen ridding himself of his loaded .38 caliber revolver by throwing it out the kitchen window and into the courtyard even before Perez became involved. Seconds later, after Perez stepped from the kitchen and aimed a shotgun down the hallway at Officer Schmidt, two men, who could only have been defendant and Ayala, were observed running behind Perez from the living room to the kitchen. One of them, probably Ayala, who was later arrested as he emerged from the living room area, darted back to the living room almost instantaneously. During this flurry of activity, defendant and his cohort were yelling among themselves in Spanish. Even if Perez, as he held the officers at bay, was unaware of what defendant was doing, as we implicitly held in the prior *Perez* appeal, despite continual discussion in Spanish, the evidence subsequently recovered from the courtyard made plain what defendant was doing—he was disposing of the Winchester shotgun and most of the ammunition by throwing it out the kitchen window.

A Winchester shotgun and the .38 caliber revolver, both with scratches and broken decorative pieces indicative of their six-story fall, were recovered from the courtyard. Officer Zaboras found "wood pieces", including one marked "Tauris", which fit the .38 caliber revolver, and others which matched the Winchester shotgun. The additional recovery of .38 caliber

bullets from the floor near the kitchen window, as well as others from defendant's pocket, which he obviously failed to dispose of before surrendering, further confirmed that all this material had come from the apartment. Plainly, the presence of bullets on the floor and the commotion in the apartment indicate that additional contraband was being hastily discarded after defendant threw his revolver out the window. Unlike Perez, who was occupied by the police, defendant was the only one in the kitchen during all the critical time periods. Thus, his culpability in disposing of the Winchester shotgun was established in a commonsensible manner.

In the face of this strong circumstantial evidence, which the jury accepted, the suggestion by defendant that the Winchester could have been discarded by others in the building is insufficient to create a reasonable doubt. While proof of possession, if solely based on circumstantial evidence, must be such as to exclude to a moral certainty every reasonable hypothesis but that of guilt and be inconsistent with innocence *(People v Ford,* 66 NY2d 428, 441; *People v Benzinger, supra,* 36 NY2d, at 32), "absolute or metaphysical" certainty of proof is not necessary. *(People v Eckert,* 2 NY2d 126, 129.) Thus, defendant's conviction, based on his constructive and, in fact, actual possession of the Winchester shotgun, should be sustained.

Nor was the evidence deficient in establishing defendant's constructive possession of the Mossberg, since the jury could have reasonably concluded that he had the ability or intent to exercise control over it. Indeed, just after defendant fled into the kitchen to dispose of his revolver, Perez emerged from the kitchen wielding the shotgun. In reversing Perez' conviction for possession of defendant's handgun, this court noted that the People were unable "to demonstrate defendant's ability or intent to exercise dominion and control over the revolver" and that "[t]here [was] no evidence even to suggest defendant's knowledge of that revolver." *(People v Perez, supra,* 125 AD2d, at 237.)* While the relatively small and easily concealed handgun defendant had in his waist might not have been observed by Perez, the highly visible shotgun could not have been concealed and the jury was entitled to conclude that defendant was fully cognizant of its presence in the small, 6- by 9-foot kitchen. Thus, defendant's nearly exclusive control over the kitchen area, his knowledge that Perez held the highly visible shotgun, his own access to it and his efforts to discard shotgun ammunition all demonstrate that defendant and Perez were acting jointly with respect to the Mossberg shot-

gun. (Cf., People v Lynch, supra, 116 AD2d, at 61 [circumstantial evidence of the defendant's knowledge of gun's presence, his immediate control over the location and his access to the gun found sufficient to sustain a possession conviction].)

I also note that the majority, citing People v Vasquez (104 AD2d 429), holds that the evidence must be considered separately against each defendant, even where two or more defendants are tried together on a theory of acting in concert. As authority for that proposition, the Vasquez court cited CPL 300.10 (4), which merely requires the reporting of separate verdicts in cases of multiple defendants. Even though only Perez was seen physically possessing the Mossberg, such possession does not preclude a finding that defendant constructively possessed the same weapon. Since the indictment charged defendant with acting in concert with Perez, the jury, after a proper charge on the principle of accessorial liability— and there is no claim that the court's charge was inadequate on that point—could consider the evidence in the aggregate. While each element of the crime must be proven against each defendant, nevertheless, the evidence offered against one may also be considered against the other. In such cases, the role played by each of the defendants, depending on the jury's assessment, may be part of a mosaic. Proof of actual possession by Perez may establish constructive possession by defendant, even if actual possession is not.

Accordingly, I would affirm the judgment.