OPINION OF THE COURT
Alexander, J.
In these cases, we consider the extent to which the principles of accessorial liability and constructive possession may support a finding that evidence presented to a Grand Jury is legally sufficient to establish a prima facie case of criminal possession of a controlled substance. In both cases the trial court’s dismissal of counts of the indictments charging criminal possession of a controlled substance were affirmed by the Appellate Division. The People were granted leave to appeal in each case by a Judge of this Court. The legal principles we apply are the same in both cases, but the significantly different factual scenarios require an affirmance in People v Manini and a reversal in People v Fuente.
The indictments in both cases resulted from investigations of the New York State Organized Crime Task Force (OCTF) into the importation of drugs into New York. In Manini, the investigation began in December 1987, and focused on drug trafficking in Onondaga and Cayuga Counties. In the course of its investigation, the OCTF discovered that Manini, an unindicted co-conspirator, Sanford Paige, and codefendant Vincent DeTomaso, along with several other parties, were involved in the importation into and distribution of drugs within New York. Operating out of California, Manini provided Paige and DeTomaso with cocaine on two separate occasions: in April of 1988 he flew to Buffalo from California with one kilogram of cocaine and sold it to Paige; in late June of 1988, Paige obtained nine ounces of cocaine from defendant "on credit” in California. Thereafter, on June 29, 1988, Paige flew from California to Rochester, New York, carrying almost four ounces of cocaine.[1] He was met at the Rochester Airport by DeTomaso. They left the airport together and were both arrested and the cocaine seized. A 38-count indictment re- *566 suited; six of the charges related to Manini, including criminal possession in the second and third degrees for the possession by Paige of the almost four ounces of cocaine on June 29, 1988.[2]
Defendant’s motion to dismiss the indictment on the ground that the evidence presented to the Grand Jury was legally insufficient was granted by the trial court to the extent of dismissing counts 37 and 38, which related to the possession of the cocaine seized from Paige on June 29, 1988 in New York. The Appellate Division affirmed. The courts below held that the evidence presented to the Grand Jury was legally insufficient to establish Manini’s liability for criminal possession of the cocaine physically possessed by Paige in New York on June 29, 1988 under either a theory of accessorial liability or constructive possession.
In People v Fuente, the investigation leading to defendant’s arrest and indictment began in the summer of 1988, and focused on cocaine trafficking by various individuals in the Monroe County area. Between November 12, 1988 and November 19, 1988, utilizing court-authorized electronic surveillance, the police intercepted calls to Puente’s telephone in Rochester. During various intercepted conversations relating to arrangements for the purchase of cocaine between Fuente, his girlfriend and a person who later testified before the Grand Jury, the police learned that Fuente was planning a trip to obtain cocaine for resale to his customers. On November 15, 1988, codefendant Disnardo Carballo was observed arriving at Puente’s apartment complex in a blue Dodge van registered to the mother of Carballo’s girlfriend, codefendant Luz Martinez. About one hour later, Carballo left with another male, presumed to have been Fuente, and the two drove in the van to the home of Martinez’s mother in Rochester. Minutes after the van left the apartment complex, the person who later testified before the Grand Jury called Puente’s apartment and was told by his girlfriend that he had gone to obtain cocaine, and would return later in the week. The witness testified that she understood that Fuente had gone to Florida to obtain cocaine. Over the next few days, surveillance attempts to locate the van were unsuccessful.
*567 Finally, on November 19, 1988 the police observed the same blue van driven by Carballo earlier in the week pulling into the driveway at the home of Martinez’s mother; Carballo was driving and Luz Martinez was in the front passenger seat. About 30 seconds later Fuente, driving his own car, also pulled into the driveway. Both vehicles pulled into a parking area behind the house and remained there for about 10 minutes. The police then observed the vehicles pull out of the driveway and head down the street. When the van turned the corner and pulled into another driveway the police blocked the driveway with two police vehicles, and searched the van pursuant to a search warrant. Approximately one kilogram of cocaine was seized from the van, and Carballo and Martinez were arrested. The cocaine was packaged in four separate packages, each marked with a name. Other items found in the van, including a recent newspaper and a merchandise receipt, indicated that the occupants had been in Florida as recently as November 17, 1988. Fuente was stopped at a different location nearby and also arrested.
On April 14, 1989, Fuente, Carballo and Martinez were indicted for conspiracy in the second degree and criminal possession of a controlled substance in the first and third degrees. Fuente’s motion to dismiss the indictment for legal insufficiency of the evidence before the Grand Jury was granted by the trial court to the extent of dismissing the two possession counts. Although the People argued that the evidence was sufficient under the principles of either accessorial liability or constructive possession, the Appellate Division affirmed, stating only that "[t]he evidence before the Grand Jury was insufficient to establish defendant’s constructive possession of the contraband.” (170 AD2d 986.)
On this appeal the People contend in both cases that the evidence presented to the Grand Jury was legally sufficient to establish, prima facie, each defendant’s liability for possession of drugs found in the actual possession of another under the theories of accessorial liability and/or constructive possession. They argue that each defendant should be liable for criminal possession of a controlled substance even though neither was in actual possession of the drugs upon which the dismissed counts were based.[3] They contend that the fact that narcotics *568 suppliers and middle- and high-level drug dealers use others to actually transport and distribute the narcotics should not shield them from liability for possession of drugs by those others when they themselves caused or directed the possession. In Manini, the People point out that out-of-State suppliers of narcotics who provide drugs for distribution within New York often retain a "continuing possessory interest” in the drugs until they are sold; that if the out-of-State supplier’s possessory interest extends into New York, there is no reason why the supplier should not be held liable by reason of that possessory interest either as an accessory or under the principles of constructive possession. In Fuente, the People contend that sophisticated, higher-level drug dealers often attempt to insulate themselves from potential criminal liability by having others handle drugs being bought and sold. They argue that these dealers should be held criminally liable, as accessories or under the principles of constructive possession, for their direct involvement in the possession of drugs by associates or others employed to assist them in their drug distribution business. Thus, they contend that in each case the evidence submitted to the Grand Jury was legally sufficient to support the indictments and that in each case there should be a reversal.
We begin our discussion by noting that under settled law "legally sufficient evidence” means competent evidence which, if accepted as true, would establish every element of the crime charged and the defendant’s commission of it (CPL 70.10 [1]; People v Haney, 30 NY2d 328, 335-336). The test of legal sufficiency in this context is whether the evidence, viewed in the light most favorable to the People, if unexplained and uncontradicted, would be sufficient to warrant conviction by a *569 trial jury (People v Jennings, 69 NY2d 103, 114-115; People v Pelchat, 62 NY2d 97, 105). With this definition and test in mind, we address each of the People’s liability theories in turn.
A. Accessorial Liability
Under section 20.00 of the Penal Law, a defendant is accessorially liable for a criminal offense committed by another when he "solicits, requests, commands, importunes, or intentionally aids” another to engage in the offense, and when the defendant does so "with the mental culpability required for the commission” of the offense (Penal Law § 20.00; People v Flayhart, 72 NY2d 737, 741). The People argue that, inasmuch as defendant Manini "intentionally aided” Paige to commit the offense of criminal possession of a controlled substance when he sold him the drugs "on credit”, and defendant Fuente "aided and abetted” his codefendants Carballo and Martinez in their possession of a controlled substance because they procured the drugs under his direction and on his behalf, the courts below erred in dismissing the possession counts against these defendants.
Penal Law § 20.10 provides, however, that a person is not criminally liable for an offense committed by another "when his own conduct, though causing or aiding the commission of such offense, is of a kind that is necessarily incidental [to the commission of the offense]” (see, Penal Law § 20.10). If the conduct of the person sought to be held liable as an accomplice constitutes a related but separate offense, that person is liable only for his/her own offense, and not for the offense committed by the principal (see, Penal Law § 20.10). Thus, if a person’s conduct is of a kind that is "necessarily incidental” to the commission of the other person’s offense that person is exempt from accomplice liability, and is criminally liable only for his or her own conduct if it constitutes a related but separate offense.
The People contend, however, that Penal Law § 20.10 does not prohibit assessing accessorial liability against Manini and Fuente for possession of cocaine by others because their conduct was not "necessarily incidental” to that possession within the meaning of the statute. They argue that the plain language of the statute and its legislative history indicate that the prohibition against accomplice liability is only applicable if the definition and nature of the principal’s crime is such *570 that, in all circumstances, not just in those presented in the particular case, the crime could not have been committed without the participation of the accessory (cf., People v Glover, 57 NY2d 61). The People point out that a person may possess drugs without there ever being a seller, i.e., where the drugs were stolen or found, or even grown or manufactured directly by the possessor. Since the offense of criminal possession of a controlled substance does not contemplate or require, in all circumstances, the participation of another, the argument goes, defendants’ conduct in either "intentionally aiding” (Manini) or "aiding or abetting” (Fuente) another to possess drugs is not "of a kind” that is "necessarily incidental” thereto, and thus section 20.10 is not applicable.
We do not believe, however, that the statute should be so narrowly interpreted. We find nothing in the history of Penal Law § 20.10 to support the conclusion that the Legislature intended the exemption to be construed such that one who sells drugs to another thereby becomes an accomplice to the other’s resulting possession. Interpreting the statute in the manner advocated by the People would broaden the reach of accessorial prosecutions such as this to an extent and in a way not clearly intended by the Legislature.
In the interpretation of a statute "[t]he legislative intent is the great and controlling principle” (see, People v Ryan, 274 NY 149, 152; McKinney’s Cons Laws of NY, Book 1, Statutes § 96, at 202). Notwithstanding the People’s contrary argument, it does not clearly appear that the Legislature meant to limit section 20.10 in its application so as to exclude situations such as those presented in these two cases. The underlying purpose of the statute appears to have been to prevent unnecessary prosecutions in cases where "ordinarily each culprit in such a reciprocal situation [would be] prosecuted for his particular offense” such that there would be "no need for torturing [the putative accessory’s] conduct into accessorial guilt of the correlative offense” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 20.10, at 57 [1975]).
Under the former Penal Law, "a fairly logical if strained” argument could be made that a person guilty of bribe giving was also guilty of bribe receiving (see, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 20.10, at 57 [1975]; see also, Staff Notes of Temp State Commn on Revision of Penal Law and Criminal Code, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate *571 Int 3918, Assembly Int 5376], at 315 [1964]).[4] Although a literal reading of section 20.00 might support the same contention, section 20.10 would in fact preclude prosecution of the bribe giver for the crime of bribe receiving (Hechtman, op. cit.; Staff Notes of Temp State Commn, op. cit.).
While, as the People point out, there may be situations in which a person may come into possession of illegal drugs by finding, stealing or manufacturing them, it is far more likely that the purchaser’s possession resulted from a sale.[5] Thus, in the vast majority of cases, a "sale” is "necessarily incidental” to the possession of narcotics. In the typical drug transaction scenario, the seller will continue to be liable for his own actual possession and sale, and in some cases for conspiracy to commit narcotics offenses.
Viewed in this light, it seems unlikely that in enacting section 20.10, the Legislature intended that the typical drug transaction was not to be included as one of the "kinds of reciprocal conduct and offenses” covered by the statute (Hechtman, op. cit., at 57). Indeed, while it is conceivable that a purchaser of narcotics could be convicted of criminal sale of a controlled substance as an accessory under section 20.00, application of section 20.10 limits his culpability to that resulting from his own conduct, i.e., possession (see, e.g., Hechtman, op. cit., at 57; 7 Zett, New York Criminal Practice H 62.1 [6], at 62-48). We do not perceive any reason, nor has any been advanced by the People to demonstrate why, where a purchaser obtains drugs from a seller, section 20.10 should not similarly preclude prosecution of the seller as an accessory to the resulting possession by the purchaser, especially since he remains liable for his own conduct: his possession and sale.
The People’s reliance on our decision in People v Feliciano (32 NY2d 140) is misplaced. Feliciano is distinguishable and inapposite. There, an individual disembarking from a boat carrying cocaine discovered that he was being followed by customs officials. He dropped the bag containing the narcotics and attempted to flee. Feliciano drove toward him to enable him to get into the car so that he could get away with the *572 narcotics. We determined that Feliciano had "aided and abetted” the individual in his possession of the drugs and thus was properly charged with possession of the narcotics as an accessory. Moreover, no issue was raised in that case as to the applicability of section 20.10.[6] By contrast, here, Manini and Paige engaged in a reciprocal transaction which resulted in Paige’s possession of the drugs. The People’s reliance on United States v Smith (832 F2d 1167) is equally misplaced. There the court held that a supplier of controlled substances can be convicted for aiding and abetting the recipient’s subsequent possession (see, 18 USC §2 [a] ["Whoever * * * aids, abets, counsels, commands, induces or procures (an offense against the United States), is punishable as a principal”]; see also, People v Burroughs, 830 F2d 1574, 1581-1582). We find no provision in the United States Code, however, comparable to New York’s Penal Law § 20.10, which specifically provides for an exemption in instances such as those, presented here. Thus, United States v Smith cannot be considered as persuasive precedent.
We therefore conclude that in both Manini and Fuente, the evidence presented to the Grand Jury was legally insufficient, as a matter of law, to the extent that evidence tended to establish accessorial liability since Penal Law § 20.10 precludes prosecution of these defendants for criminal possession of a controlled substance where the possession was solely that of another.
B. Constructive Possession
 The People alternatively argue that the evidence presented in both cases was sufficient to support the possession counts of the indictments under the theory of constructive possession. We conclude, however, that the evidence presented in Manini was legally insufficient to support the possession counts on a theory of constructive possession, but that in Fuente the evidence was legally sufficient to support the possession counts of the indictment.
The People acknowledge in Manini that constructive posses *573 sion is usually established by showing that a defendant exercised dominion and control over the place where contraband was seized or over the person who actually possessed the property. They argue, however, that a defendant’s constructive possession may also be established by showing that he retained a "continuing possessory interest” in the contraband sufficient to give him the requisite dominion and control. They rely principally on United States v Burroughs (830 F2d 1574, supra) where the defendant was charged with possession with intent to distribute, based on the actual possession of narcotics by others. Burroughs sold heroin "on credit” in New York to various individuals who ultimately possessed and sold the drugs in Jacksonville, Florida. Finding that he had a financial stake in the ultimate sale of the heroin in Florida, the court deemed Burroughs to have had constructive possession of the drugs seized from persons in Florida until he received payment, even though he relinquished physical possession of the drugs in New York (cf., United States v Brunty, 701 F2d 1375, 1382 [11th Cir], cert denied 464 US 848). Thus, the court rejected defendant’s challenge to venue in Florida and concluded that venue was proper (see, 18 USC § 3237 [a] [for an offense to have taken place within the trial district, it must have been begun, continued, or completed there]).
We have never adopted such a broad definition of constructive possession in this State, and are not persuaded that we should do so now. In New York, the rule has long been that to support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised "dominion or control” over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized (see, Penal Law § 10.00 [8]; People v Francis, 79 NY2d 925; People v Pearson, 75 NY2d 1001 [evidence legally insufficient to establish defendant’s constructive possession of cocaine found in back room of grocery store in absence of evidence that defendant owned, rented or had control over or a possessory interest in store or room];[7] People v Tirado, 47 AD2d 193, affd on opn below 38 NY2d 955 [proximity of drugs in apartment and defendant’s control of premises support conclusion of constructive possession]; People v Diaz, 112 AD2d 311 [evidence that defendant instructed another to *574 retrieve and sell cocaine to undercover officer sufficient to establish defendant’s constructive possession of cocaine]; People v Rivera, 77 AD2d 538 [defendant who commanded his brother to get a gun and pull trigger had complete dominion and control over gun]; cf., People v Patel, 132 AD2d 498, lv denied 70 NY2d 935 [in absence of any proof that defendant had authority over person in actual possession of gun, there is no constructive possession]).
Applying these principles to the facts in Manini, we conclude that the evidence was insufficient to establish the requisite level of control or authority by Manini over Paige to support a finding that Manini was in constructive possession of the drugs seized from Paige in New York. The record does not reflect that any evidence was presented to the Grand Jury that Manini, in California, exercised any type of authority over Paige while Paige was in New York in possession of the cocaine. To the contrary, the record evidence is that Manini gave Paige the drugs "on credit” and fully expected to receive payment for them. In order to insure payment on the debt, Manini demanded and received "collateral” from Paige as security. Rather than establishing any continuing dominion and control over the cocaine, it is clear that Manini relinquished dominion and control over the drugs by selling them to Paige, albeit "on credit”. There is no indication that Manini was involved in Paige’s subsequent distribution or had any authority over what Paige did with the drugs after receiving them. Thus, the evidence presented was legally insufficient to establish that Manini was in constructive possession of the cocaine.
The evidence presented in Fuente, however, compels a different result. Viewing that evidence, as we must, in the light most favorable to the People (see, People v Jennings, 69 NY2d 103, 114-115; People v Pelchat, 62 NY2d 97, supra), we conclude that it was legally sufficient to establish defendant’s liability, under a theory of constructive possession, for the actual possession of the kilogram of cocaine seized from the van occupied by codefendants Carballo and Martinez.
A defendant may constructively possess property if he has dominion and control over the drugs as a result of his authority over the person who actually possesses them, rather than through his access to or control over the place where the drugs are kept (see, e.g., People v Passero, 83 AD2d 769; People *575 v Diaz, 112 AD2d 311, supra; People v Rivera, 77 AD2d 538, supra). Here, there was evidence from the extensive intercepted telephone conversations that the cocaine seized from the van occupied by Carballo and Martinez had been obtained for resale to defendant’s customers and was being transported on defendant’s behalf and at his direction. Moreover, in contrast to the situation in Manini, Fuente, although not in physical possession of the narcotics, retained a level of control over the drugs sufficient to support a finding of constructive possession. Minutes before the seizure of the cocaine, he was observed following closely behind the van in his own car, and both vehicles stopped together for several minutes in the parking area of the driveway to the house of Martinez’s mother before continuing their progress. Fuente was subsequently apprehended in his own car only a short distance from where the van was stopped. Thus, the evidence in its totality provided a sufficient basis for the Grand Jury to conclude that defendant Fuente was in constructive possession of the kilogram of cocaine seized from the van.
Accordingly, the order of the Appellate Division should be reversed in People v Fuente, and counts two and three of the indictment reinstated. In People v Manini the Appellate Division order should be affirmed.
Chief Judge Wachtler and Judges Kaye, Titone, Hancock, Jr., and Bellacosa concur; Judge Simons taking no part.
In People v Manini: Order affirmed.
In People v Fuente: On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order reversed and counts two and three of the indictment reinstated.
June 9,1992
Motion, treated as a motion for clarification of this Court’s opinion, granted. In that the evidence before the Grand Jury was sufficient to establish defendant Fuente’s constructive possession of the contraband, we did not reach the issue whether, on the facts of that case, a theory of accessorial liability could also support those charges.

. Of the original nine ounces, there is evidence in the record that Paige sold four ounces in Los Angeles, but had only approximately four when he arrived in New York. The ninth ounce "came up missing.”

. Manini was also charged with criminal possession of a controlled substance in the first and third degrees (relating to his actual possession in April 1988 of the kilogram of cocaine he sold to Paige), conspiracy in the second degree and criminal sale of a controlled substance in the first degree.

. Defendant Manini was charged with criminal possession of a controlled substance in the second and third degrees; Fuente was charged with criminal possession of a controlled substance in the first and third degrees.
*568 Penal Law §220.16 (1) provides, in pertinent part, that "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses * * * a narcotic drug with intent to sell it.”
Penal Law § 220.18 (1) provides, in pertinent part, that "[a] person is guilty of criminal possession of a controlled substance in the second degree when he knowingly and unlawfully possesses * * * one or more preparations, compounds, mixtures or substances of an aggregate weight of two ounces or more containing a narcotic drug.”
Penal Law § 220.21 (1) provides, in pertinent part, that "[a] person is guilty of criminal possession of a controlled substance in the first degree when he knowingly and unlawfully possesses * * * one or more preparations, compounds, mixtures or substances of an aggregate weight of four ounces or more containing a narcotic drug.”

. The Penal Law was substantially revised in 1965 (see, L 1965, ch 1030).

. The term "sell” is broadly defined in the Penal Law to include any form of transfer of a controlled substance from one person to another, and means "to sell, exchange, give or dispose of to another, or to offer or agree to do the same” (see, Penal Law § 220.00 [1]; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 220, at 14).

. We also note the holding in People v Glass (133 AD2d 705) that a defendant who supplied cocaine to another for the other person to sell was liable, as an accessory, for the subsequent sale and possession of the drugs. There is no indication that the court considered the application of Penal Law § 20.10 to the facts of that case. In view of our holding today, to the extent that Glass may be read to the contrary, it is not to be followed.

. But see, Penal Law § 220.25 which, in specified circumstances, creates a presumption of possession.