People v Yerian (2018 NY Slip Op 04981)





People v Yerian


2018 NY Slip Op 04981


Decided on July 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 5, 2018

108531

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
KRISTINA L. YERIAN, Appellant.

Calendar Date: June 7, 2018

Before: Garry, P.J., McCarthy, Lynch, Devine and Mulvey, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
Stephen K. Cornwell Jr., District Attorney, Binghamton (Stephen Ferri of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeals (1) from a judgment of the County Court of Cortland County (Campbell, J.), rendered July 30, 2015, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the second degree, and (2) from a judgment of said court, rendered November 12, 2015, which resentenced defendant.
In June 2014, police found three persons — defendant, Terry L. Maricle and Robert J. Alberts — in a residential garage where methamphetamine was being manufactured. Defendant was charged with criminal possession of a controlled substance in the third degree; Maricle and Alberts were charged with the same offense and also with unlawful manufacture of methamphetamine in the third degree. Following a joint jury trial, all three were convicted as charged, and defendant was sentenced to a prison term of three years followed by five years of postrelease supervision [FN1]. Alberts' convictions were affirmed upon appeal (People v Alberts, 161 AD3d 1298, 1306 [2018]), but Maricle's convictions were reversed on the ground that they were not supported by legally sufficient proof that he possessed methamphetamine or the materials necessary to manufacture it (People v Maricle, 158 AD3d 984, 988 [2018]). Defendant now [*2]appeals.
On the day of defendant's arrest, she and Maricle visited Alberts in a garage on property owned by Alberts' parents. That evening, a police officer received a tip that methamphetamine was being manufactured on the premises. He drove by the property, stopped and got out of his vehicle when he saw light smoke wafting from a window in the garage door with a missing pane, and noticed a strong chemical odor that he recognized from previous experience as indicative of the presence of an active methamphetamine lab. Alberts emerged from the garage, appearing to be nervous. The officer spoke briefly with him and left. After discussing his observations with a supervisor, the officer returned to the premises a few minutes later and noticed that the window opening had been covered with insulation. Alberts again came out of the garage and, when asked by the officer if anyone else was present, called defendant outside. Upon hearing noises inside, the officer entered the garage, found Maricle sitting on a stool in a workshop at the rear and directed him to leave.
In plain view on a shelf in the workshop, the officer saw a plastic soda bottle that contained fluids and appeared to be a "one-pot" — that is, a device in which methamphetamine is manufactured by mixing various household ingredients to produce a chemical reaction. After about two minutes, during which the officer continued to notice the strong chemical odor, he left the garage, put on a mask and reentered, again for about two minutes, to make sure that there was no one else inside. The officer testified that, after his first visit to the premises, the chemical odor was strong enough to "stuff up" his sinuses; once he entered the garage, he began to experience a headache and an upset stomach that lasted for several hours. A warrant was obtained, and a search disclosed various household items that can be used as precursors, solvents and reagents in the manufacture of methamphetamine, as well as numerous tools used in that process, including plastic tubing, aluminum foil and coffee filters. Additionally, Alberts left white pills that he said were cold medicine in a police vehicle. Subsequent testing of samples taken from the plastic bottle on the workshop shelf established the presence of methamphetamine.
Defendant told police that she and Maricle had been dating on and off for about a year. At Maricle's request, she drove him to what she described as Alberts' home on the day of her arrest. Defendant stated that she knew Alberts as "Bob" and had been to his house only once before. Upon arriving, defendant and Maricle joined Alberts in the garage, where defendant said that she took aspirin for a migraine headache, lay down on a couch in the workshop, covered herself with blankets, fell asleep for what she estimated was a couple of hours and awakened when police arrived. Defendant stated that she had bought pseudoephedrine — which can be used as a precursor in manufacturing methamphetamine — "[a] couple days" before at a nearby WalMart to treat her allergies. She said that she had last used methamphetamine more than a year earlier, that she had never made methamphetamine, did not know how to do so and had neither made methamphetamine nor used it on the day of her arrest. She stated that she had not been able to smell the chemical odor because she was "clogged up" by her allergies [FN2]. [*3]Photographs of the workshop showed a couch with blankets on it near the shelf where the one-pot was found.
As defendant was not found to be in physical possession of methamphetamine, the People proceeded against her on a theory of constructive possession. Thus, it was their burden to establish that she "exercise[d] dominion or control" over the methamphetamine in the one-pot or the area where it was found (Penal Law § 10.00 [8]; see People v Manini, 79 NY2d 561, 573 [1992]; People v Leduc, 140 AD3d 1305, 1306 [2016], lv denied 28 NY3d 932 [2016]). Defendant's mere presence in the garage where the methamphetamine was found is not enough, standing alone, to establish dominion or control (see People v Headley, 74 NY2d 858, 859 [1989]; People v Maricle, 158 AD3d at 986; People v Edwards, 206 AD2d 597, 597 [1994], lv denied 84 NY2d 907 [1994]). There were no other indicators that defendant had dominion or control over the garage or of the property where it was located; she did not reside there, and there was no evidence that she had keys, kept belongings there or frequently spent time there (see People v Maricle, 158 AD3d at 986-987; People v Brown, 188 AD2d 930, 931 [1992]; compare People v Alberts, 161 AD3d at 1300-1301). The People argue that the couch where defendant said she was napping was near the shelf where the one-pot containing methamphetamine was found (see e.g. People v Carpenter, 51 AD3d 1149, 1150 [2008], lv denied 11 NY3d 786 [2008]), and they emphasize the one-pot's presence in plain view, the smoke and chemical odor noticed by the police officer and the presence in the garage of various substances and tools used to produce methamphetamine. However, knowledge of the presence of an illegal substance does not, without more, meet the People's burden to demonstrate that a defendant "had the ability and intent to exercise dominion or control over the contraband" (People v Burns, 17 AD3d 709, 711 [2005] [emphasis added; internal quotation marks and citations omitted]; see People v Wheeler, 159 AD3d 1138, 1143-1144 [2018]). Here, the People failed to present evidence of such ability or intent.
Contrary to the People's assertions, defendant's statement to police that she had purchased pseudoephedrine a couple of days before her arrest did not establish her dominion or control over the methamphetamine found in the garage. The purchase might have been significant to the issue of defendant's criminal intent if, like Maricle and Alberts, she had been charged with unlawful manufacture of methamphetamine. However, she was charged solely with criminal possession of the methamphetamine found in the garage, which, as already discussed, required the People to establish her dominion or control over that substance. Pseudoephedrine itself is not illegal to purchase, and the People presented no evidence — such as receipts, packaging or a codefendant's testimony — that might have shown that the pseudoephedrine that she purchased was actually present in the garage, had been used to produce the methamphetamine or was otherwise linked to that substance and, thus, given rise to an inference that defendant had dominion or control over the methamphetamine she was charged with possessing.
Although this Court has held that an inference of dominion or control over a controlled substance "could possibly" be supported by evidence of a defendant's prior use of the drug (People v Maricle, 158 AD3d at 988), no such inference can be drawn from defendant's admitted prior use of methamphetamine in the circumstances presented here. Despite the lengthy period of time between her prior use and her arrest, the People argue that this evidence demonstrates her familiarity with the appearance of the drug. However, the testimony established that the substance in the one-pot was not necessarily recognizable as methamphetamine to a prior user of the drug, as it was not yet in usable form. According to a police officer with specialized training in dealing with methamphetamine labs who participated in the search of the premises, the methamphetamine in the one-pot was still in suspension in the bottle's liquid contents and had not yet been subjected to the last steps in the manufacturing process. The officer acknowledged that he could not tell whether methamphetamine was present simply by looking at the container, that an average person would not be able to make that determination, and that negative test results had been obtained from other substances in the garage that he had collected during the search because he suspected that they contained methamphetamine (see id. at 987). Further, the officer who testified about the chemical odor in the garage said that the smell was similar to that of paint thinner, acknowledged that paint thinner is commonly found in garages and stated that he was able to recognize the smell as that of an active methamphetamine lab because of his professional experience. In the absence of evidence that defendant had experience in the manufacture of methamphetamine or was otherwise familiar with its appearance in a one-pot or the process of producing it, neither the presence of the one-pot near the couch nor that of the batteries, drain opener and other substances and tools that were found in the garage — all of which were legal to own and were mixed with innocuous household items all over the garage — was sufficient to give rise to an inference that defendant had dominion or control over the methamphetamine that proved to be present in the one-pot. Thus, "the People failed to demonstrate that defendant exercised dominion or control over lab equipment, precursors, reagents, solvents or substances containing methamphetamine," and the evidence of knowing possession is legally insufficient to support her conviction (id. at 988; see People v Huertas, 32 AD3d 795, 795 [2006]; People v Thompson, 214 AD2d 763, 764 [1995]; People v Edwards, 206 AD2d at 597). Accordingly, the indictment must be dismissed.
Defendant's remaining arguments are rendered academic by this determination.
McCarthy, Lynch, Devine and Mulvey, JJ., concur.
ORDERED that the judgments are reversed, on the law, and indictment dismissed.



Footnotes

Footnote 1:An initial error in the length of defendant's term of postrelease supervision was corrected upon resentencing.

Footnote 2:Contrary to defendant's contention, the admission of testimony about her statement to police did not violate County Court's Molineux ruling. The ruling had precluded the admission of a report from a national database indicating that defendant had purchased a decongestant and exchanged it for Sudafed on the day before her arrest, but did not bar the admission of any part of her statement. Defendant's related argument that the part of her statement describing her prior methamphetamine use should have been excluded as unduly prejudicial is unpreserved, as defendant concededly made no such claim at trial (see People v Murray, 155 AD3d 1106, 1110-1111 [2017], lv denied 31 NY3d 1015 [2018]).