People v Maxwell (2024 NY Slip Op 05737)

People v Maxwell

2024 NY Slip Op 05737

Decided on November 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., MONTOUR, GREENWOOD, NOWAK, AND KEANE, JJ.

794 KA 22-01847

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SAMUEL MAXWELL, DEFENDANT-APPELLANT. 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (SABRINA A. BREMER OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (BRIDGET L. FIELD OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Monroe County Court (Julie M. Hahn, J.), rendered October 27, 2022. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the third degree (three counts) and criminally using drug paraphernalia in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), three counts of criminal possession of a controlled substance in the third degree (§ 220.16 [1], [12]), and two counts of criminally using drug paraphernalia in the second degree (§ 220.50 [2], [3]). Defendant's conviction stems from the execution of a search warrant at the downstairs apartment of a house in the early morning hours. The police recovered individually-wrapped drugs and drug paraphernalia from a rear bedroom, the kitchen, and the living room. The police also recovered a loaded gun, wrapped in a white towel, from the floor of the rear bedroom and several rounds of ammunition from that room.
We reject defendant's contention that the evidence is legally insufficient to establish either his constructive possession of the gun, drugs, and drug paraphernalia located in the house or his liability as an accessory. Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that there is sufficient evidence that defendant constructively possessed the contraband (see People v Torrance, 206 AD3d 1722, 1723 [4th Dept 2022]; People v Everson, 169 AD3d 1441, 1442 [4th Dept 2019], lv denied 33 NY3d 1068 [2019]) or that he acted as an accessory (see People v Jones, 224 AD3d 1348, 1353 [4th Dept 2024], lv denied 41 NY3d 1019 [2024]; People v Slade, 133 AD3d 1203, 1204 [4th Dept 2015], lv denied 26 NY3d 1150 [2016]). The testimony of the police witnesses as well as a witness for the codefendant established that the downstairs apartment was a trap house, i.e., a house that was used solely for the purpose of selling narcotics. Two police witnesses gave extensive testimony about the characteristics of trap houses, including that they are sparsely furnished; that all points of entry would be barricaded and surveillance cameras would be used; that the individual in control of the trap house would not sleep or stay there; that one or two people working for the person in charge would occupy the trap house and package narcotics there; and that sales would occur at a door or window. They also explained that firearms were often found in trap houses and that a "community gun" would be available for use by anyone involved in the operation of the trap house.
An investigator conducted surveillance of the house for several weeks prior to the execution of the warrant and observed numerous people walking along the side and toward the rear of the house. During the execution of the warrant, the police had to use chainsaws to remove the front and back door, and the front door was blocked by two-by-fours. Four [*2]surveillance cameras outside the house were transmitting live feeds to a television inside the house, and there was also another television on. When the police eventually gained entry into the downstairs apartment, they found the codefendant in a stairwell leading to the upstairs apartment and found defendant in the shower in the upstairs apartment. Defendant had a cut above his eye, there was a blood trail leading from the staircase off the downstairs apartment kitchen to the upstairs apartment, and defendant's balled-up clothing, which lay next to the shower, was partially wet and had blood on it. Defendant's identification was found in the living room of the downstairs apartment, and his fingerprint was on the bottom of a dinner plate that had drug paraphernalia on it and had been found in the living room of the downstairs apartment.
The target of the police investigation, who was found at another location, pleaded guilty in connection with the gun recovered from the search of the downstairs apartment. He testified on the codefendant's behalf and admitted that the house was a trap house. Although he testified that the gun and drugs were his, he admitted that defendant had permission to be in the house to watch television. As noted, drugs and drug paraphernalia were located throughout the downstairs apartment, including some individually-packaged drugs that were found in the kitchen on a stand near the window with some loose money. The police also recovered signs from the kitchen that said "knock on window, bell broke" and "closed till Sept. 15!!!! Sorry"; September 15 was the day before the warrant was executed.
We conclude that the People established that defendant "exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband [was] found" (People v Manini, 79 NY2d 561, 573 [1992]; see Penal Law § 10.00 [8]; Jones, 224 AD3d at 1352-1353). The evidence "went beyond defendant's mere presence in the [house] at the time of the search and established 'a particular set of circumstances from which a jury could infer possession' of the contraband" (People v McGough, 122 AD3d 1164, 1166 [3d Dept 2014], lv denied 24 NY3d 1220 [2015], quoting People v Bundy, 90 NY2d 918, 920 [1997]; see People v Crowley, 188 AD3d 1665, 1666 [4th Dept 2020], lv denied 36 NY3d 1056 [2021]). A "valid line of reasoning and permissible inferences" (People v Bleakley, 69 NY2d 490, 495 [1987]) from the evidence—including the fact that two televisions were on in the downstairs apartment, that defendant's identification was in the living room, that defendant's fingerprint was on a plate in the living room, that defendant was bleeding and a blood trail led to the upstairs apartment, and that defendant had permission to be in the downstairs apartment—supports the conclusion that defendant had been in the downstairs apartment just prior to the police entry into the house. The evidence also supports the inference that defendant was selling drugs from the kitchen window and had possession of the drugs and gun for the operation of the trap house. Although "[a] defendant's mere presence in the house where the weapon is found is insufficient to establish constructive possession" of the weapon (People v King, 206 AD3d 1593, 1594 [4th Dept 2022]), as set forth above, there is ample additional evidence here to support the inference of defendant's possession under the specific facts of this case. Further, the jury rationally could have concluded that defendant acted with the mental state necessary for the crimes and that he intentionally aided the other individuals to engage in conduct constituting those offenses (see Jones, 224 AD3d at 1353).
Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we likewise reject defendant's contention that the verdict is against the weight of the evidence (see Jones, 224 AD3d at 1353; People v Stumbo, 155 AD3d 1604, 1606 [4th Dept 2017], lv denied 30 NY3d 1120 [2018]).
Contrary to defendant's contention, the sentence is not unduly harsh or severe. We note, however, that the certificate of conviction should be amended to reflect that defendant was sentenced as a second felony drug offender (see People v Parilla, 214 AD3d 1399, 1402 [4th Dept 2023], lv denied 40 NY3d 936 [2023]).
Entered: November 15, 2024
Ann Dillon Flynn
Clerk of the Court