OPINION OF THE COURT
 

 Memorandum.
 

 The order of the Appellate Division in each case should be affirmed.
 

 In each of these appeals, defendants challenge the factual finding that their respective pretrial showup identifica
 
 *888
 
 tians were not unduly suggestive. In
 
 Clark,
 
 the record supports the determination that the identifications were not the product of police suggestion but rather spontaneous. One of the two robbery victims observed the perpetrator in a neighborhood market, asked the manager for his address, and then contacted the police with this information. Subsequently, the victims were escorted by the police to the address, where they immediately identified the defendant as their assailant when he opened the apartment door. We agree with the courts below that this procedure was not unduly suggestive and that complainants’ identifications were spontaneous
 
 (see, People v Newball,
 
 76 NY2d 587, 591;
 
 People v Duuvon,
 
 77 NY2d 541, 543;
 
 cf., People v Dixon,
 
 85 NY2d 218).
 

 In
 
 Williams,
 
 the record reveals that the showup was the result of happenstance. An individual contacted the victim, who had been raped and sodomized two weeks earlier in the lobby of her apartment building, claiming to have her passport and identification cards. These items were stolen from her apartment approximately 12 days after the rape. Based on a description provided by a neighbor whom this individual approached in an attempt to locate the victim and the caller’s admission that he had been looking for her at the apartment building, the victim believed this person was her attacker.
 

 After conferring with the police, she arranged to meet this individual outside of a subway station to recover her property. The complainant was transported to the designated meeting place by two detectives in an unmarked police vehicle. After canvassing the area several times, the detectives spotted an individual, who matched the complainant’s prior descriptions, standing by himself atop the stairs leading down to the subway. After parking their car and instructing the complainant to remain inside, the detectives followed the suspect, who had descended into the subway station. The detectives approached the suspect at the public phone he appeared to be using. A scuffle developed when the suspect pushed one of the detectives in response to their questions. The detectives placed him under arrest and a search of his pockets yielded the complainant’s passport and identification cards. During this time, a commotion had erupted near the token booth because of a problem with subway service, prompting the detectives to remove the defendant from the station. The complainant observed the detectives emerge from the station with defendant, and immediately recognized and identified him to the detectives as her attacker. The complainant confirmed this
 
 *889
 
 identification when the detective who was holding defendant indicated, in response to her inquiry, that defendant’s teeth were crooked, a feature she repeatedly attributed to her attacker.
 

 Given the erratic circumstances of the detectives’ encounter with defendant, the resulting "showup” identification procedure was unavoidable, the product of a fast-paced, uncontrollable situation
 
 (see, People v Rivera,
 
 22 NY2d 453, 455,
 
 cert denied
 
 395 US 964;
 
 People v Dixon,
 
 85 NY2d 218,
 
 supra).
 
 To the extent that the undisturbed findings of the courts below involve mixed questions of law and fact, which are amply supported by the record evidence, this Court’s review is concluded
 
 (see, People v Oeller,
 
 82 NY2d 774, 775).
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 In each case: Order affirmed in a memorandum.