(April 25, 1996)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WESLEY WILLARD, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID J. JOHNSON, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANNELL E. CARPENTER, Appellant. [641 NYS2d 896] —Spain, J. Appeal from a judgment of the County Court of Warren County (Moynihan, Jr., J.), rendered August 3, 1994, upon a verdict convicting defendant Wesley Willard of the crimes of rape in the first degree and sexual abuse in the first degree.

Appeal from a judgment of the County Court of Warren County (Moynihan, Jr., J.), rendered August 3, 1994, upon a verdict convicting defendant David J. Johnson of the crimes of rape in the first degree, sodomy in the first degree and sexual abuse in the first degree.

Appeal from a judgment of the County Court of Warren County (Moynihan, Jr., J.), rendered August 3, 1994, upon a verdict convicting defendant Dannell E. Carpenter of the crimes of rape in the first degree, sodomy in the first degree and sexual abuse in the first degree.

On the afternoon of September 28, 1993, the complainant and her then-boyfriend went to defendant Wesley Willard's apartment; they were accompanied by another individual, Paul Spiak. Defendants David J. Johnson and Dannell E. Carpenter subsequently arrived and everyone was drinking beer; the complainant's boyfriend and Spiak eventually passed out. Johnson, Willard, Carpenter and the complainant got into Johnson's van and after driving around they went to the complainant's apartment; they all left her apartment and smoked some marihuana enroute to a bar in the Town of War-

rensburg, Warren County, where they consumed more beer. Upon leaving the bar and planning to return to Willard's apartment, the complainant asked why they were going in a different direction and was told that they were going somewhere to smoke some more marihuana. She testified that after pulling off to the side of a road near West Mountain in the Town of Queensbury, Warren County, Johnson and Carpenter simultaneously grabbed her arms and proceeded to pull her to the front of the van where she resisted them and struggled with them; according to the complainant, defendants held her down and pulled aside her clothing so as to expose her body. She further testified that, as they held her down, all three defendants touched her breasts or genitals, Carpenter and Johnson orally sodomized her and Johnson subjected her to forcible sexual intercourse. At this point, according to the complainant, all three defendants exited the van and she dressed herself and went to the rear of the van; defendants reentered the van and drove her to Willard's apartment, where she ran screaming and locked herself in the bathroom. The complainant's screaming attracted the attention of a neighbor who called the police; when the police arrived she reported the incident and was taken to the local hospital emergency room.

In December 1993, defendants were each indicted for, *inter alia*, rape in the first degree and sexual abuse in the first degree; Carpenter and Johnson were also each indicted for, *inter alia*, sodomy in the first degree. Following a joint trial held in June 1994, defendants were each convicted of rape in the first degree and sexual abuse in the first degree; Johnson and Carpenter were also convicted of sodomy in the first degree. Willard was sentenced as a second felony offender, to consecutive prison terms of 10 to 20 years for the rape conviction and $3^{1}/_{2}$ to 7 years for the sexual abuse conviction. Johnson was sentenced as a second felony offender to consecutive prison terms of $12^{1}/_{2}$ to 25 years for the rape conviction, $12^{1}/_{2}$ to 25 years for the sodomy conviction and $3^{1}/_{2}$ to 7 years for the sexual abuse conviction. Carpenter was sentenced to consecutive prison terms of $8^{1}/_{3}$ to 25 years for the rape conviction, $8^{1}/_{3}$ to 25 years for the sodomy conviction and $2^{1}/_{3}$ to 7 years for the sexual abuse conviction. Defendants appeal.*

Johnson and Carpenter each argue that it was error for County Court to grant the People's application to hold a joint

* Defendants have made overlapping as well as separate arguments; this decision is arranged according to the issue presented and each specific defendant raising that issue is identified at the beginning of the discussion of that issue.

trial; in our view their argument is meritless. Defendants were separately indicted for offenses arising out of the same criminal scheme or transaction, i.e., the September 28, 1993 attack on the complainant (see, CPL 200.40 [2]). County Court ordered the indictments to be joined for trial upon the condition that the People not seek to use any statements made by Willard on their direct case (see generally, Bruton v United States, 391 US 123). Because the proof against defendants was supplied by the same evidence, i.e., the testimony of the complainant, a joint trial was appropriate (see, People v Mahboubian, 74 NY2d 174, 183); said defendants have failed to demonstrate how their defenses were in any way antagonistic, mutually exclusive or irreconcilable (compare, supra, at 184).

Johnson's contention that the verdict convicting him was against the weight of the evidence is also without merit. In particular, Johnson argues that the evidence at trial established that the victim was not credible. During her testimony, the complainant unequivocally denied having any previous sexual involvement with Johnson. In addition to the complainant's testimony of the event, the jury heard the testimony of the police investigator who interviewed her at the hospital and the following day, and the physician who examined her after the attack; based on the physician's exam, he concluded that complainant had likely been subjected to nonconsensual sexual intercourse. Furthermore, the testimony of the three witnesses called by Johnson had little bearing on the issue of whether the complainant had been raped, sodomized and sexually abused on September 28, 1993. Johnson's witnesses testified as to alleged prior sexual contact between Johnson and the complainant—contact which she denied—leaving a credibility issue for the jury to resolve. Consequently, the verdict against Johnson was not against the weight of the evidence (see, People v Murphy, 188 AD2d 742, lv denied 81 NY2d 890; People v Carthrens, 171 AD2d 387, 392).

Willard's contention that County Court abused its discretion in making its Sandoval ruling is without merit; in particular, he argues that the convictions upon which the court permitted inquiry were too remote. In the event Willard were to take the stand, the People sought to inquire about a 1983 conviction for burglary in California and a 1986 conviction for the unauthorized use of a vehicle in Ohio. County Court, in response, fashioned a compromise question which did not identify the underlying crimes or permit inquiry into the underlying conduct (see, People v Walker, 83 NY2d 455, 459); moreover, it is well established that "there are no per se rules requiring

preclusion because of the age" of a prior conviction (*supra*, at 459).

Johnson and Carpenter each contend that County Court abused its discretion by denying a challenge for cause of a prospective juror. During jury selection, prospective juror No. 20 was called. Questioning revealed that he was a prison corrections counselor; he assured County Court that his occupation would not prevent him from rendering a fair and impartial verdict in the event he was chosen as a juror. He subsequently assured counsel that if selected, he would render a decision based upon the evidence presented, rather than "on fear or on prejudice or on anything else". Against this backdrop, the same juror was questioned about the T-shirt he was wearing which said, "Support Your Local Corrections Officers. Reinstate Capital Punishment." According to the juror, he was "angry" and "irritated" the evening before when he was personally served with a summons for jury duty, so he decided he would make his statement about capital punishment with his T-shirt. He then acknowledged that the instant prosecution had nothing to do with the death penalty and that he merely believed corrections officers should have "added protection under the law", which also had nothing to do with the case. He concluded, "actually, I'm sorry I wore this shirt today, because it lets you ask that question, and I don't want you to think that I can't reach a reasonable conclusion and weigh evidence". Thereafter, defendants' challenge for cause made with respect to the juror was denied.

As is relevant here, a challenge for cause may be made where a prospective juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]). Although Johnson and Carpenter colorably argue that the juror's last statement could be interpreted to mean that he would have preferred to hide any biases he possessed rather than announce them by wearing a T-shirt, it is our view that, in the context of the entire voir dire (*see, People v Blyden*, 55 NY2d 73, 78), it does not appear that said juror had a state of mind which would preclude him from rendering an impartial verdict. Prior to the T-shirt discussion, he had unequivocally stated that his occupation would not affect his ability to render an impartial verdict and that, if selected, he would make a decision based solely on the evidence presented (*compare, People v Moore*, 172 AD2d 778, *lv denied* 78 NY2d 970; *People v Scott*, 170 AD2d 627). Johnson and Carpenter have not demonstrated that the juror's admitted annoyance at being called for jury

duty with little notice, or his political beliefs regarding the death penalty, created a state of mind which would preclude him from being an impartial juror (*compare, People v Nicolas*, 171 AD2d 817; *see generally, People v Blyden, supra*). Accordingly, we conclude that County Court did not abuse its discretion when it denied the request to excuse the juror for cause.

Willard and Carpenter each argue that County Court abused its discretion by ruling that defendants would not be permitted to introduce a photograph allegedly taken by Johnson a few weeks prior to September 28, 1993; the photograph apparently depicted the complainant posing for the camera while holding her boyfriend's penis. County Court ruled that, pursuant to the rape shield law (CPL 60.42), the photograph depicting the complainant's prior sexual conduct with an individual other than defendants was inadmissible. Contrary to defendants' arguments that the photograph was evidence of prior group sexual encounters between defendants and the complainant, the photograph only depicted the complainant engaging in sexual conduct with her boyfriend. The evidence clearly does not fall within the exception regarding "prior sexual conduct with the accused" (CPL 60.42 [1]) and was not otherwise relevant or admissible (*see*, CPL 60.42 [5]; *People v Goodwin*, 179 AD2d 1046; *see generally, People v Williams*, 81 NY2d 303). In our view County Court's refusal to permit the admission of the photograph into evidence was not an abuse of discretion.

We also reject Johnson's and Carpenter's contention that they were denied a fair trial as a result of allegedly improper comments made by the prosecutor during summation. Initially, these defendants argue that the prosecutor improperly referred to the incident as a "gang rape" twice during summation. The record reveals that defendants failed to preserve this argument by objecting to these comments (*see*, CPL 470.05 [2]). In any event, we conclude that the comments were not an unfair characterization of the evidence and that Johnson and Carpenter have wholly failed to demonstrate that the remarks had " 'a decided tendency to prejudice the jury' " (*People v Halm*, 81 NY2d 819, 821, quoting *People v Ashwal*, 39 NY2d 105, 110). Johnson and Carpenter also argue that the prosecutor improperly injected his personal opinion into the summation. Only one comment, involving the prosecutor's opinion about the hotel where the complainant had been residing, was objected to by defendant; County Court promptly ordered the remark to be stricken. In our view the comment was innocuous and clearly could not have prejudiced the jury (*see, supra*).

Johnson and Carpenter further contend that County Court

erred by denying their request for a missing witness charge based on the People's alleged failure to produce complainant's boyfriend as a witness; their contention is unavailing. During the charge conference, defendants requested, for the first time, a missing witness charge for the boyfriend. The People argued that the request was not timely, that they had unsuccessfully sought to locate the boyfriend pursuant to an outstanding bench warrant and that he would merely offer cumulative testimony. The record reveals that Johnson and Carpenter failed to make a prima facie showing that they were entitled to a missing witness charge (*see, People v Gonzalez*, 68 NY2d 424, 427). Moreover, even assuming that they had made the requisite showing, the People, who represented that, despite a bench warrant and diligent efforts to locate the boyfriend, his whereabouts were unknown, adequately demonstrated that the witness was not available to them (*see, supra*, at 428).

We also reject the assertion by Willard and Johnson that the indictments should have been dismissed because Assistant District Attorney Kevin Bruen was allegedly not a resident of Warren County during the prosecution of this matter. Initially, the record confirms that defendants were each indicted in December 1993 and Bruen was not appointed until January 1, 1994; accordingly, there is no merit to the argument that an unauthorized prosecutor presented the matter to the Grand Jury. Even assuming that Bruen was not a resident of Warren County during this period, his nonresidency would not impair his authority to act as the People's representative since he had been duly appointed and had taken the oath of office (*see, People v Dunbar*, 53 NY2d 868; *compare, People v Di Falco*, 44 NY2d 482).

We also reject the contention of all three defendants that County Court erred in denying their postverdict motions to set aside the verdict based on, *inter alia*, newly discovered evidence, i.e., that the complainant recanted. County Court apparently denied these motions, although an order does not appear in the record. Inasmuch as the motion based on alleged newly discovered evidence occurred after the judgment was rendered, the motion should have been brought pursuant to CPL 440.10, not CPL 330.30 (*see*, CPL 330.30, 440.10). An appeal as of right does not lie from the denial of a CPL 440.10 motion (*see*, CPL 450.10), but must be sought by permission (*see*, CPL 450.15 [1]; 460.15), and there is no indication in the record that any of the defendants sought leave to appeal from that order.

In any event, we conclude that County Court properly denied the motions. Defendants submitted the affidavits of two wit-

nesses, Samantha DeMars and Colleen Vredenburg, who averred that the complainant stated on various occasions that she had not been raped by defendants, but had willingly participated in sexual activities with them. To qualify as newly discovered evidence for the purpose of CPL 440.10 (1) (g), defendants must demonstrate that the evidence meets six criteria: "(1) it must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could have not been discovered before the trial by the exercise of due diligence, (4) it must be material to the issue, (5) it must not be cumulative to the former issue, and (6) it must not be merely impeaching or contradicting the former evidence" (*People v Gurley*, 197 AD2d 534, 535). Here, on the face of the motion papers, defendants, minimally, cannot meet the second and third requirements. Vredenburg averred that she heard the complainant recant her allegations of rape in October 1993—well before trial—and that at that point in time she supplied Johnson's attorney with the information. Annexed to Vredenburg's affidavit is a copy of the letter she sent to counsel, dated October 25, 1993, outlining the complainant's alleged statements recanting her version of the events. Clearly, defendants had the information regarding the complainant's alleged recantation well before the June 1994 trial. Furthermore, they have not demonstrated that this information, beyond that already possessed by October 1993, could not have been obtained with the exercise of due diligence (*see, People v Johnson*, 208 AD2d 562, *lv denied* 84 NY2d 937; *People v Garcia*, 166 AD2d 199, 200, *lv denied* 77 NY2d 906).

Johnson and Carpenter further argue that County Court abused its discretion in ordering their rape, sodomy and sexual abuse sentences to run consecutively, rather than concurrently, because the attack upon the complainant was essentially one continuous act. The testimony of the complainant established that Johnson and Carpenter each committed distinct and separate acts constituting the crimes, for which consecutive sentences may be imposed (*see*, Penal Law § 70.25 [2]; *People v King*, 209 AD2d 797). Initially, Carpenter's accomplice liability for the rape (Penal Law § 130.35 [1]) committed by Johnson is a separate act apart from his own criminal conduct for which consecutive sentences may be imposed (*see, People v Williams*, 141 AD2d 783, *lv denied* 72 NY2d 1051). Carpenter's conduct in sodomizing and in later sexually abusing the complainant by fondling her breasts was not "one continuous act", but involved separate and distinct acts (*see, People v Williams*, 114 AD2d 683, 685; *compare, People v Lussier*, 205 AD2d 910, *lv denied* 83 NY2d 1005, *cert denied* 513 US 1078).

As to Johnson, it is clear that he sexually abused the complainant, exited the vehicle and then proceeded to orally sodomize her prior to forcibly subjecting her to the separate act of sexual intercourse; based on the proof, consecutive sentences were properly imposed (*see, People v Williams*, 202 AD2d 347, 348, *affd* 85 NY2d 886; *People v Cropper*, 202 AD2d 603, 605-606, *lv denied* 84 NY2d 824). Finally, considering Johnson's extensive criminal history, which includes felony convictions for sexual offenses, it is our conclusion that County Court did not abuse its sentencing discretion in ordering the sentences to run consecutively.

However, we reach a different conclusion with respect to Carpenter, whose extensive criminal history consists of misdemeanor and petty offense convictions spanning 18 years. Significantly, his criminal record does not include any felony convictions or any convictions based on sexual offenses. The interest of justice warrants that his sentences be modified to run concurrently instead of consecutively (*see, People v Delgado*, 80 NY2d 780).

We have considered each of defendants' remaining contentions and find them to be either unpreserved for appeal or without merit.

Cardona, P. J., White and Casey, JJ., concur. Ordered that the judgment as to defendant Wesley Willard is affirmed. Ordered that the judgment as to defendant David J. Johnson is affirmed. Ordered that the judgment as to defendant Dannell E. Carpenter is modified, on the law and the facts, by directing that the prison sentences imposed run concurrently rather than consecutively, and, as so modified, affirmed.