■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES YOUNG, Also Known as SUPREME, Appellant. [670 NYS2d 940] —Mikoll, J. P. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered December 12, 1994, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree, criminal

possession of a controlled substance in the seventh degree, criminal use of drug paraphernalia in the second degree and criminal nuisance in the second degree.

At issue on this appeal are County Court's rulings on defendant's pretrial suppression and *Sandoval* motions, as well as its denial of a defense request for the submission of a lesser charge to the jury under the first count of the indictment. Defendant also alleges error in the court's failure to give an interested witness charge relative to testimony by police officers.

On January 25, 1994, at approximately 10:20 P.M., Albany Police narcotics officers engineered a "controlled buy" of crack cocaine at an apartment building at 397 State Street in the City of Albany utilizing a confidential informant, John Fendrick. Fendrick, a crack cocaine addict, had previously lived in the apartment building and was acquainted with several of its occupants, including defendant. In preparation for the transaction, Fendrick was strip-searched to ensure that he possessed no contraband, fitted with a "body wire," and given $100 with which to make two $50 purchases of crack cocaine inside the apartment building. Police watched Fendrick enter the apartment building, and then monitored his conversations and activities via the listening device.[1] When Fendrick emerged from the building he produced a quantity of crack cocaine which he had purchased inside, and returned $50 to police, as the second planned transaction was not consummated. He also elaborated to police as to what had occurred inside the building, and on the basis thereof, as well as the tape generated from the body wire, search warrants for two apartments, 7B and 7C, were obtained and executed several hours thereafter.

Defendant was charged in a four-count indictment with criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, criminal use of drug paraphernalia in the second degree and criminal nuisance in the second degree. The first two counts stemmed from the Fendrick transaction and the last two counts arose out of the execution of the search warrant. Defendant was convicted of the first count and acquitted of the second count. However, with respect to count two, the jury instead convicted him of the lesser included offense of criminal possession of a controlled substance in the seventh degree. Defendant was also convicted as charged of the third and fourth counts. County

---

1. The police could not see inside the building and no other officers or operatives were positioned inside the building; they relied on Fendrick's description of what was transpiring as well as what they could hear themselves.

Court sentenced defendant as a second felony offender to a prison term of 12½ to 25 years.

From the varying accounts in the record, a somewhat murky scenario emerges as to what precisely occurred when Fendrick purchased the cocaine. Initially, it is to be noted that the tape contained a statement from Fendrick to the effect that he was going to the location to purchase drugs from an individual known as "Black". It is acknowledged that at no time did Fendrick indicate he was going to purchase drugs from defendant. He testified on direct examination that he proceeded to apartment 7B, knocked on the door and when defendant answered, Fendrick stated that he wanted to purchase $50 worth of crack cocaine and handed defendant $50. Fendrick stated that defendant knocked on the wall between apartments 7B and 7C, and then left the apartment, saying "I'll get it", returning shortly with another male called "Black", who had the cocaine. According to Fendrick, Black asked defendant who the cocaine was for, and defendant said "give him [Fendrick] the stuff". On cross-examination, however, Fendrick stated that when defendant returned to 7B with Black, *defendant* had the cocaine, but then handed it to Black, who then asked defendant who it was for and defendant indicated it should be given to Fendrick. The tape of the transaction did not contain defendant's voice subsequent to his leaving the apartment after knocking on the wall.

Defendant testified that Fendrick came to apartment 7B and asked for a "fifty," and that he (defendant) knocked on the wall to summon Black, and then left the apartment. He testified that Fendrick gave him no money and that he was not present when the drugs were given to Fendrick. Instead, he said, he was outside in the hall, having briefly gone downstairs to an apartment on the sixth floor looking for another individual. Other than summoning Black, defendant denies participating in the sale.

Defendant complains that County Court erred in failing to give an interested witness charge relative to the testimony of police officers since it charged the jury that defendant could be considered an interested witness. This issue is not preserved for appellate review inasmuch as defendant requested no such charge (*People v Huynh*, 215 AD2d 168; *People v Drake*, 204 AD2d 478, *lv denied* 84 NY2d 867). Even were we to consider this claim on its merits, we do not view the court's charge in its entirety as unbalanced.

Nor did County Court err in refusing to submit the charge of criminal possession of a controlled substance in the seventh

degree as a lesser-included offense of criminal sale of a controlled substance in the third degree. While the court grounded its refusal to so charge on its finding that no reasonable view of the evidence supported the conclusion that defendant possessed, but did not sell the cocaine, the request was properly denied because left unsatisfied here was the first component of the required two-pronged test for submission as a lesser included offense, which requires that it be impossible to commit the higher offense without concomitantly committing the lesser one (*see, People v Van Norstrand*, 85 NY2d 131; *People v Glover*, 57 NY2d 61; *People v Pruitt*, 190 AD2d 692, *lv denied* 81 NY2d 975, *cert denied* 510 US 880; *People v Frazier*, 156 AD2d 583, *lv denied* 75 NY2d 868).

We also decline to disturb the County Court's ruling on the motion to suppress evidence garnered as a result of the search warrant issued herein. The warrant application was based upon an ongoing police investigation of the premises, as well as upon the transaction that had just been effected by Fendrick, as monitored and corroborated by police. While it is conceded that Fendrick's reliability as an informant had not been otherwise established prior to his participation in the purchase from apartment 7B, we find that there existed sufficient basis for the issuance of the warrant. The facts of this case are distinguishable from *People v Martinez* (80 NY2d 549), in that the informant's purchase of narcotics in that case was not monitored by police.

With respect to defendant's final point on appeal, the *Sandoval* issue, we take a much less benign view of County Court's ruling and conclude, for the reasons which follow, that reversal and a new trial are required.

At the time of his trial in 1994, defendant was a 44-year-old crack cocaine addict, having used the drug daily for at least 12 years. His criminal record began in 1970 with a conviction for petit larceny and continued through 1990 with a conviction for criminal possession of a controlled substance in the fifth degree. With respect to defendant's *Sandoval* motion, the only convictions upon which County Court precluded cross-examination were the 24-year-old petit larceny conviction, and a 19-year-old disorderly conduct conviction. As to the remainder of defendant's convictions, dating back 18 years to 1976, the court ruled cross-examination would be proper. The court expressly permitted, if not encouraged,[2] inquiry in every instance into the original charge for which defendant had been arrested, and

---

2. In response to defense counsel's objection, County Court said "when one pleads out for the maximum charge on a misdemeanor that is a mis-

whether or not the ultimate conviction represented a reduced, or plea-bargained disposition.

The prosecutor took full advantage of the *Sandoval* ruling, with a full one-third of his cross-examination of defendant devoted to his criminal record. As condoned by County Court, the questioning was not confined to defendant's criminal convictions, but included thorough eliciting of the original charges for which defendant was arrested, and the sentence imposed in each case.[3] On no less than *14* separate occasions, he specifically questioned defendant as to the specific sentence that was imposed, ranging from several sentences of probation, to sentences in Albany County Jail, to State prison sentences. Not content with this testimony, the prosecutor elicited the fact that, as to one arrest, a bench warrant was issued because defendant "failed to show up," and over defense counsel's objection, that on another occasion his probation was violated because "you didn't abide by the terms of the probation." Notwithstanding the fact that in the *Sandoval* hearing, the defense advised the prosecutor and the court that defendant's felony assault conviction had been reversed on appeal, the prosecutor questioned defendant about this felony conviction, his State prison sentence thereon, and its underlying facts which the prosecutor described, despite defendant's denial, as "hitting a police officer with a wine bottle."

The conclusion is inescapable that County Court's pretrial *Sandoval* ruling and those rulings made upon defendant's objections during his cross-examination constituted a clear abuse of discretion which resulted in undue prejudice to defendant, depriving him of a fair trial. Our recitation of the facts above was designed to demonstrate that evidence of guilt on the sale count was by no means overwhelming, with numerous factual discrepancies requiring resolution by the jury and credibility of the witnesses, particularly defendant, critical thereto. Significantly, the jury acquitted defendant of the second count of the indictment charging possession with intent to sell, and

---

statement, unless you know the context, and you and I both know the context in terms of that being a plea bargain. When one pleas out to a maximum on a reduced charge, saying you just pled guilty to a misdemeanor is a misstatement."

**3.** Thus, one of the prosecutor's first questions was "you were accused of grand larceny, stealing property of a greater value than two hundred and fifty dollars * * * and do you remember being convicted of possession of stolen property in the third degree and placed on three years probation?" The follow-up question was "And on December 2nd, 1976, do you remember being charged with a felony in that case?", and to clarify "do you remember being accused of possessing stolen property on December 2nd, 1976?"

rendered a guilty verdict on the lesser included possessory offense.

We note that in their brief on appeal, the People defend the trial court's *Sandoval* ruling in part by stating that the People "were allowed to inquire whether defendant had been convicted for a certain level felony, but were not allowed to question the defendant regarding the details of the conviction or about the underlying facts."

Our decision to reverse is based upon several factors, whose cumulative effect compels the result reached: the age and number of the convictions, the exacerbating inquiry into the original charges and arrests, the sentences imposed, the references to bench warrants and violations of probation, and the inquiry into the reversed felony conviction.

Through its various refinements and fact-driven applications, the principles of *People v Sandoval* (34 NY2d 371), and its progeny remain intact. The central inquiry still remains: "Will the testimony to be elicited in cross-examination have a disproportionate and improper impact on the triers of fact?" (*id.*, at 376). Among the factors still to be considered are the passage of time and consequent relevance to credibility at the time of testimony, whether the criminal act was one of "impulsive violence" having no "logical bearing on the defendant's credibility, veracity or honesty" or one evincing a "determination *deliberately* to further self-interest at the expenses of society"; whether the "crimes or conduct [were] occasioned by addiction or uncontrollable habit, as with alcohol or drugs" (*id.*, at 376-377 [emphasis supplied]).

With respect to the age of the convictions permitted to be used, reviewing courts have eschewed a per se rule of exclusion (*see, People v Willard*, 226 AD2d 1014, *lv dismissed* 88 NY2d 943, *lv denied sub nom. People v Carpenter*, 88 NY2d 981). We have, however, in the past found that use of convictions dating from 15 years or more was unduly prejudicial (*see, People v Henry*, 222 AD2d 932, *lv denied* 88 NY2d 848; *People v Contreras*, 108 AD2d 627). Older convictions have been permitted in situations where a defendant has been incarcerated for extensive periods in the intervening years (*see, People v Shakur*, 233 AD2d 793, *lv denied* 89 NY2d 1041; *People v Miller*, 184 AD2d 375, *lv denied* 80 NY2d 1028), or where the court fashioned appropriate compromises relative to the older convictions (*see, People v Willard, supra*). While the Court of Appeals' decision in *People v Walker* (83 NY2d 455) is cited for the proposition that "there are no per se rules requiring preclusion because of the age, nature and number of a defendant's

prior crimes" (*id.*, at 459), the Court expressly noted that it found no legal reason to disturb the trial court's exercise of discretion: "In this regard, it must be stressed that 'in the usual case, appellate review of the exercise of discretion by the trial court * * * ends in the intermediate appellate court'" (*id.*, at 458, quoting *People v Pollock*, 50 NY2d 547, 550).

Although not raised by the People, we consider and reject the notion that any prejudice inuring to defendant by reason of the cross-examination is rendered harmless by his admission during his testimony that he was a crack cocaine addict who had committed crimes to support his habit. Defendant testified that he used, but did not sell, crack cocaine, and he specifically denied selling crack cocaine to Fendrick. His credibility was in issue, and before testifying he was aware of the court's rulings on the permissible scope of cross-examination. Reasonable trial strategy in the face of an adverse *Sandoval* ruling justifies his effort to minimize its impact by preempting the issue on direct.

In summary, we do not find that County Court engaged in the required "sensitive, informed reconciliation of the interests of the People and the rights of the defendant" (*People v Sandoval, supra*, at 375). To be sure, the court was required to weigh the People's legitimate interest in, and right to explore the veracity of the witness, but it was also required to consider the "risk that the presumption that a defendant is innocent may go by the board solely because of a jury's natural tendency to conclude * * * that a defendant who has committed previous crimes is either the kind of person likely to have committed the crime charged or is deserving of punishment in any event" (*People v Davis*, 44 NY2d 269, 274; *see, People v Williams*, 56 NY2d 236).

Crew III, White, Peters and Carpinello, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Albany County for a new trial.