(April 20, 2006)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LYNDALE RIGGINS, Appellant. [813 NYS2d 262]—

Crew III, J. Appeal from a judgment of the Supreme Court (Mathews, J.), rendered February 6, 1998 in Broome County, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, criminal possession of a controlled substance in the first degree (two counts) and criminal possession of a controlled substance in the third degree (two counts).

Defendant appeals from his conviction and sentence, after a jury trial, for conspiring to commit the crimes of criminal possession and criminal sale of a controlled substance, as well as two counts each of the substantive crimes of criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree for which he was sentenced to, among other things, 20 years to life imprisonment. On this appeal, defendant contends that while the evidence may have established his participation in a conspiracy with some, but not all, members of the conspiracy, it was not legally sufficient to prove that he was a member of a

single integrated conspiracy. For the reasons that follow, we disagree and affirm.*

The record reflects that in 1994, James Pope, a Broome County resident, began purchasing kilogram amounts of cocaine from a source in Miami, Florida, which he sold to dealers for distribution in Tompkins, Broome and Monroe counties. In 1995, Pope and his partner, Darryl Charles, began purchasing their cocaine from Eddie Rodriguez in Puerto Rico and, at about the same time, expanded their enterprise to include distribution in Orange County. By 1995, Pope had further expanded the enterprise to include distribution in Michigan and North Carolina.

In 1996, Pope was introduced to defendant, a North Carolina resident, and he began supplying defendant with cocaine. The evidence revealed two specific deliveries of cocaine to defendant, one in May 1996 when Pope sold defendant three kilograms of cocaine for $42,000 and one in June 1996 when Pope sold defendant six kilograms of cocaine for $70,000. The evidence made plain that there were additional sales to defendant other than these and that Pope never sold defendant anything less than one kilogram of cocaine.

In spite of the record evidence referred to, defendant contends that he cannot be considered a member of a single integrated conspiracy because he was unaware of the origin of the cocaine, he did not know that there was a broader operation encompassing multiple New York counties, as well as Michigan, and he did not know any of his alleged coconspirators. We disagree. Courts have found conspiracies to exist based upon implied agreements on the theory that "one who deals in large quantities of narcotics may be presumed to know that he is a part of a venture which extends beyond his individual participation" (*United States v Magnano,* 543 F2d 431, 434 [2d Cir 1976], *cert denied* 429 US 1091 [1977]). As has been observed, "the conspirators at one end of the chain knew that the unlawful business would not, and could not, stop with their buyers; and those at the other end knew that it had not begun with their sellers" (*United States v Bruno,* 105 F2d 921, 922 [2d Cir 1939], *revd on other grounds* 308 US 287 [1939]). Indeed, defendant clearly understood that Pope was a middleman, as reflected in a tape-rec-

---

* While defendant does not challenge the legal sufficiency of the evidence supporting the charges of criminal possession of a controlled substance in the first and third degrees, he correctly asserts that if the evidence supporting the conspiracy charge is found to be legally insufficient, then there is no jurisdictional predicate for the possession charges inasmuch as they were committed in Orange County.

orded phone conversation where Pope's secretary advised defendant that Pope had encountered a problem with his supplier and would not have any more cocaine for him for several days.

Notwithstanding the foregoing, defendant asserts that the conviction is not supported by legally sufficient evidence because it rests on the uncorroborated testimony of defendant's coconspirators. Again, we disagree. The trial testimony of the coconspirators is amply corroborated by the dozens of recorded phone conversations intercepted pursuant to an authorized wiretap (*see People v Bretti*, 68 NY2d 929, 930 [1986]). We find wholly unconvincing defendant's contention that the intercepted conversations were too "cryptic" for the jury to understand. A fair reading of the transcript of the conversations in conjunction with the coconspirators' testimony readily reflect the parties' meaning even though the conversations can be seen to have been guarded, cryptic and obviously employing the use of code words. Indeed, trial counsel, in opposing the proposed use of expert testimony to aid in interpreting the conversations, referred to them as "transparent" and "easy to follow." Nevertheless, Supreme Court did permit the expert to interpret some portions of the conversations which, without doubt, tended to connect defendant to the conspiracy and thus satisfy the corroboration requirement. We have considered defendant's remaining contentions and find them equally without merit.

Cardona, P.J., Mercure, Peters and Mugglin, JJ., concur. Ordered that the judgment is affirmed.