THIRD DEPARTMENT, APRIL, 2010

(April 1, 2010)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DIMAS VARGAS, Appellant. [898 NYS2d 323]—

Peters, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered June 30, 2006, convicting defendant following a nonjury trial of the crimes of conspiracy in the fourth degree, criminal sale of a controlled substance in the third degree (11 counts), criminal possession of a controlled substance in the third degree (13 counts) and criminal possession of a controlled substance in the fourth degree (three counts).

During the course of a coordinated undercover investigation, the Community Narcotics Enforcement Team (hereinafter CNET) of the State Police received information from a confidential informant that defendant and his cohorts were supplying and distributing cocaine in the City of Binghamton, Broome County. Following eight controlled buys by the confidential informant, CNET investigators obtained eavesdropping warrants on two telephones, including a cellular telephone used by

defendant, pursuant to which they intercepted and recorded hundreds of telephone conversations between defendant and codefendants and conducted surveillance of their activities. Pursuant to a search warrant, police thereafter effectuated a traffic stop of defendant's vehicle that resulted in the seizure of 103 grams of cocaine and his arrest.

Based primarily upon the telephone conversations recorded during the eavesdropping surveillance period, defendant was indicted, along with five other individuals, and charged with conspiracy and various drug-related offenses. Following a hearing, defendant's motions to suppress all evidence obtained through the telephone eavesdropping and search warrants were denied by County Court. At the ensuing nonjury trial, the People's theory was that defendant was the leader of a cocaine selling operation wherein he would procure quantities of cocaine from New York City, transport the cocaine to Broome County for distribution, receive orders from potential buyers via cellular telephone and then call one of his codefendants to prepare, package and/or deliver the cocaine to said buyers at various locations along the streets of Binghamton. Defendant was ultimately convicted of 11 counts of criminal sale of a controlled substance in the third degree, 13 counts of criminal possession of a controlled substance in the third degree, three counts of criminal possession of a controlled substance in the fourth degree, and conspiracy in the fourth degree. He was sentenced, as a second felony offender, to an aggregate prison term of 14 years to be followed by three years of postrelease supervision.[1]

We reject defendant's assertion that the search warrant was not supported by probable cause because the reliability of the confidential informant had not been established. There is "no one acid test of reliability," and a confidential informant may be considered reliable if he or she "has come forward with accurate information in the past[,] . . . makes a statement under oath or where details of his [or her] story have been confirmed by police observation" (*People v Rodriguez*, 52 NY2d 483, 489 [1981] [citations omitted]; *see People v Alston*, 1 AD3d 627, 628 [2003], *lv denied* 1 NY3d 594 [2004]). Here, the sworn allegations in the police affidavits supporting the application, which detailed eight controlled buys of cocaine made by the confidential informant from defendant under police supervision and surveil-

---

1. This sentence was ordered to run consecutively to the 16-year prison term that defendant received following his conviction for crimes charged in an unrelated indictment. This Court affirmed defendant's conviction in that matter in a separate appeal (*People v Vargas*, 60 AD3d 1236 [2009], *lv denied* 13 NY3d 750 [2009]).

lance shortly before the issuance of the warrant, sufficiently established the confidential informant's reliability (see People v Morton, 288 AD2d 557, 558 [2001], lv denied 97 NY2d 758 [2002], cert denied 537 US 860 [2002]; People v Young, 249 AD2d 576, 579 [1998], lv denied 92 NY2d 906 [1998]).

We agree with the People's assertion that defendant's challenge to the legal sufficiency of the evidence is unpreserved inasmuch as he presented evidence after his unsuccessful motion to dismiss and failed to renew the motion at the close of all proof (see People v Lane, 7 NY3d 888, 889 [2006]; People v Hines, 97 NY2d 56, 62-63 [2001]).[2] Nevertheless, since defendant also attacks the verdict as against the weight of the evidence, we will consider the evidence adduced as to each of the elements of the challenged crimes in the context of that review (see People v Loomis, 56 AD3d 1046, 1046-1047 [2008]).

First, with respect to certain of his convictions for criminal possession of a controlled substance, defendant argues that the People failed to prove that he had a possessory interest or control over the cocaine stored at codefendant Yolanda Matthews' home and the cocaine left with codefendant Ricardo Dash.[3] For each of the counts at issue, the People proceeded on the theory of constructive possession (see Penal Law § 10.00 [8]), which required a showing that defendant "exercised dominion and control over the place where contraband was seized or over the person who actually possessed the property" (People v Manini, 79 NY2d 561, 573 [1992]; see People v Echavarria, 53 AD3d 859, 861 [2008], lv denied 11 NY3d 832 [2008]; People v Garcia, 30 AD3d 833, 835 [2006]).

As to the counts involving Matthews, she testified that de-

2. Notably, there is a lack of unanimity among the Departments concerning the manner by which a legal sufficiency claim is properly preserved under these circumstances (see e.g. People v Squires, 68 AD3d 900, 900 [2d Dept 2009]; People v Beriguete, 51 AD3d 939, 940 [2d Dept 2008], lv denied 11 NY3d 734 [2008]; People v Cooper, 67 AD3d 1254, 1255 [3d Dept 2009]; People v Camerena, 42 AD3d 814, 815 [3d Dept 2007], lv denied 9 NY3d 921 [2007]; People v Lombardi, 68 AD3d 1765, 1766 [4th Dept 2009]; People v Parks, 66 AD3d 1429, 1429 [4th Dept 2009]; People v Laing, 66 AD3d 1353, 1354 [4th Dept 2009], lv denied 13 NY3d 908 [2009]).

3. Defendant's challenge encompasses his conviction on 10 counts of criminal possession of a controlled substance in the third degree. As for the cocaine stored at Matthews' apartment, defendant was convicted of four counts on the theory that he knowingly possessed the cocaine with the intent to sell (see Penal Law § 220.16 [1]) and four counts on the basis that he possessed one-half ounce or more of cocaine (see Penal Law § 220.16 [12]). Regarding the cocaine held by Dash, defendant was convicted of one count each of possession with intent to sell (see Penal Law § 220.16 [1]) and possession of one-half ounce or more of cocaine (see Penal Law § 220.16 [12]).

fendant paid her rent, utilities, a portion of her medical expenses and for some of the car she owned and, in return, she stored defendant's cocaine at her apartment and allowed him to process the powder cocaine into crack cocaine there. Matthews further explained that, at defendant's request, she would weigh and package cocaine for resale to defendant's customers and would deliver and/or sell the cocaine on defendant's behalf. Recorded phone conversations intercepted pursuant to the authorized wiretap, which were corroborated by Matthews' testimony, established that on four separate days between June 6, 2005 and June 16, 2005, Matthews possessed one-half ounce or more of crack cocaine and was directed by defendant to package varying quantities of the substance for sale (counts 17-20, 35, 36, 38, 39). On June 17, 2005, defendant instructed Matthews to take 10 one-eighth ounce packages of cocaine from Dash and to deliver them for sale to customers (counts 43, 44). With respect to counts 33 and 34 related to defendant's constructive possession of cocaine with Dash, recorded conversations established that, when buyers sought to purchase cocaine from defendant, they would first call defendant who, in turn, would call Dash and direct him to make deliveries at a specified location. Surveillance teams would listen to the calls and, on numerous occasions, observed Dash appear and make the deliveries. Moreover, defendant paid Dash $25 for each one-eighth ounce of cocaine he sold. As to the specific counts at issue, recorded conversations established that, moments after receiving a call from an unidentified male who wanted to purchase cocaine, defendant called Dash to inform him that he had a customer who could not wait and that he was picking up four "books" of cocaine (totaling one-half ounce) that he had previously left with Dash. This evidence established that defendant constructively possessed both the cocaine stored at Matthews' apartment and held by Dash (*see People v Manini*, 79 NY2d at 574-575; *People v Garcia*, 30 AD3d at 835).

We similarly reject defendant's challenge to the evidence supporting his convictions for criminal sale of a controlled substance in the third degree and conspiracy in the fourth degree. The recorded telephone conversations between defendant and his codefendant customers Ronald Woodruff and Marsha Hoover, as well as the trial testimony of Matthews, Dash and CNET investigators, established that, with respect to each of the sale counts, defendant made "a bona fide offer to sell" indicating both the intent and the ability to proceed with the sale (*People v Mike*, 92 NY2d 996, 998 [1998]; *see* Penal Law § 220.00 [1]; *People v Samuels*, 99 NY2d 20, 24 [2002]; *People v Polanco*, 50 AD3d 587, 588 [2008], *lv denied* 11 NY3d 834

[2008]; *People v Crampton*, 45 AD3d 1180, 1181 [2007], *lv denied* 10 NY3d 861 [2008]). Turning to defendant's conviction for conspiracy in the fourth degree, the proof demonstrated that defendant entered into an agreement with one or more of his codefendants to engage in conduct constituting a class B felony, defendant intended that conduct constituting this crime be performed, and at least one of the members of the conspiracy performed an overt act in furtherance of this conspiracy (*see* Penal Law § 105.10 [1]; *People v Hilliard*, 49 AD3d 910, 912 [2008], *lv denied* 10 NY3d 959 [2008]; *People v Monday*, 309 AD2d 977, 978-979 [2003]). Contrary to defendant's contention, the trial testimony of the co-conspirators is amply corroborated by the recorded telephone conversations intercepted pursuant to the authorized wiretap (*see People v Bretti*, 68 NY2d 929, 930 [1986]; *People v Riggins*, 28 AD3d 934, 936 [2006], *lv denied* 6 NY3d 897 [2006]).

Although defendant stresses that he was never personally observed engaging in any direct hand-to-hand sales, the numerous recorded conversations made to and from defendant's cellular telephone overwhelmingly established his role in the cocaine selling operation. CNET Investigator Norman O'Neil confirmed that he listened to all of the recordings and identified the voices therein based on the repetitiveness of the calls and subsequent conversations he had with the parties. Moreover, Matthews, Hoover and Woodruff identified their voices on the audio recordings as well as the voices of Dash[4] and defendant. They also corroborated the activities on the recordings, elaborated on how defendant's drug distribution system operated and confirmed the testimony of O'Neil regarding the meaning of the street terms used by defendant and others on the recordings. While defendant argues that Hoover's testimony should be accorded little weight due to her admitted drug use and inability to recall all of the specific details of the individual sales to her, these issues were explored during the trial and presented for the factfinder's consideration, and we find nothing inherently incredible or improbable about Hoover's testimony (*see People v Miles*, 61 AD3d 1118, 1119 [2009], *lv denied* 12 NY3d 918 [2009]; *People v Holliman*, 12 AD3d 773, 775 [2004], *lvs denied* 4 NY3d 764, 831 [2005]). Moreover, her testimony as to the four sales at issue (counts 23, 27, 32 and 37) was corroborated by various recorded telephone conversations between her and defendant, as well as defendant and Dash. Upon reviewing the evidence in a neutral light and according deference to

---

4. Dash, who was unable to be produced, was the only codefendant who did not testify at trial.

County Court's assessment of the witnesses' credibility, we find that the verdict is amply supported by the weight of the credible evidence (*see People v Vasquez*, 71 AD3d 1179, 1180 [2010]; *People v Rosa*, 57 AD3d 1018, 1020 [2008], *lv denied* 12 NY3d 762 [2009]).[5]

We next address defendant's contention that he was denied the effective assistance of counsel. "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (*People v Baldi*, 54 NY2d 137, 147 [1981] [citations omitted]; *accord People v Henry*, 95 NY2d 563, 565 [2000]; *People v Brown*, 62 AD3d 1089, 1091 [2009], *lv denied* 13 NY3d 742 [2009]).

Defendant advances several arguments with respect to this claim. First, defendant faults counsel for failing to request a *Darden* hearing to test the reliability of the confidential informant. However, he has failed to demonstrate the absence of a legitimate explanation for counsel's decision in this regard (*see People v Rivera*, 71 NY2d 705, 709 [1988]), and a mere disagreement with counsel's trial strategy or tactics does not render assistance ineffective (*see id.* at 708-709; *People v Mabry*, 27 AD3d 835, 837 [2006]). Given the other, albeit unsuccessful, strategies employed by counsel to gain suppression of the fruits of the warrants, we will not second-guess counsel's decision not to request a *Darden* hearing (*see People v Rivera*, 71 NY2d at 709; *People v Smith*, 301 AD2d 671, 673 [2003], *lv denied* 99 NY2d 658 [2003]; *People v Abernathy*, 175 AD2d 407, 409 [1991], *lv denied* 78 NY2d 1073 [1991]). In any event, County Court made the specific finding that the confidential informant was reliable and that there was probable cause supporting both the search and eavesdropping warrants.

Defendant also urges that counsel should have sought dismissal of the indictment on the ground that the grand jury heard allegedly prejudicial testimony about his prior bad acts, yet he has failed to demonstrate that the remaining evidence before the grand jury would have been insufficient to support the indictment (*see People v Maye*, 18 AD3d 1026, 1028 [2005], *lv denied* 5 NY3d 808 [2005]; *see generally People v Huston*, 88 NY2d 400, 409 [1996]). Nor can counsel be deemed ineffective

---

5. Defendant's contention that the guilty verdicts on counts 45 and 46 are inconsistent with, or repugnant to, his acquittal on count 47 is unpreserved for our review (*see People v Alfaro*, 66 NY2d 985, 987 [1985]). So too is his suggestion that certain counts of the indictment were multiplicitous (*see People v Thompson*, 34 AD3d 931, 932 [2006], *lv denied* 7 NY3d 929 [2006]).

for failing to seek dismissal of the allegedly multiplicitous counts in the indictment. Even assuming that this contention would have been found meritorious, the only remedy would be dismissal of the repetitive count or counts, which would have had no practical effect upon defendant's punishment since he received concurrent sentences on the counts at issue (*see People v Thompson*, 34 AD3d 931, 932 [2006], *lv denied* 7 NY3d 929 [2006]; *People v Morey*, 224 AD2d 730, 731 [1996], *lv denied* 87 NY2d 1022 [1996]; *see also People v Brandel*, 306 AD2d 860, 860-861 [2003]).

Further, the replacement of defendant's attorney two months prior to the scheduled commencement of the trial does not support defendant's claim that he was denied the effective assistance of counsel. Tellingly, counsel obtained dismissal of three counts prior to jury deliberations as well as a not guilty verdict on a fourth count. Viewed in its entirety, the record reveals that defendant was provided with meaningful representation by trial counsel (*see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Black*, 65 AD3d 811, 815 [2009], *lv denied* 13 NY3d 905 [2009]). Further, "[b]ecause our state standard . . . offers greater protection than the federal test" and the state standard was satisfied, defendant's claim of ineffectiveness under the US Constitution must also fail (*People v Caban*, 5 NY3d 143, 156 [2005]; *see People v Ramos*, 48 AD3d 984, 988 [2008], *lv denied* 10 NY3d 938 [2008], *cert denied* 556 US —, 129 S Ct 1595 [2009]).

Finally, addressing defendant's claim that his 14-year sentence is harsh and excessive, we find neither a clear abuse of discretion nor the existence of any extraordinary circumstances warranting a reduction of the sentence in the interest of justice (*see* CPL 470.15 [3] [c]; [6] [b]; *People v Elliot*, 57 AD3d 1095, 1097 [2008], *lv denied* 12 NY3d 783 [2009]; *People v Rollins*, 51 AD3d 1279, 1282-1283 [2008], *lv denied* 11 NY3d 922 [2009]). Further, "[t]he mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof that defendant was punished for asserting his right to trial" (*People v Simon*, 180 AD2d 866, 867 [1992], *lv denied* 80 NY2d 838 [1992]; *accord People v Beauharnois*, 64 AD3d 996, 1001 [2009], *lv denied* 13 NY3d 834 [2009]). We find no support in the record that the sentence imposed was based upon any such vindictiveness; rather, it was based upon, among other appropriate considerations, defendant's extensive criminal history—which included two other convictions for similar drug-related activity—and the sheer quantity and frequency with which defendant was trafficking cocaine into Broome County

for distribution (*see People v Burroughs*, 64 AD3d 894, 898-899 [2009], *lv denied* 13 NY3d 794 [2009]; *People v Richardson*, 28 AD3d 1002, 1005 [2006], *lv denied* 7 NY3d 817 [2006]).

Defendant's remaining ascriptions of error, including those raised in his pro se brief, have been fully reviewed and found lacking in merit.

Cardona, P.J., Spain, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.

